*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
March 24, 2020

v

DENNIS LEROY WALLACE,

        Defendant-Appellant.

No. 343795
Oakland Circuit Court
LC No. 2017-265503-FC

Before: BECKERING, P.J., and SAWYER and GADOLA, JJ.

PER CURIAM.

Defendant was convicted by a jury of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a) and (2)(b)) (victim under age 13), and two counts of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(a) and (2)(b)) (victim under age 13), and was sentenced as a fourth-offense habitual offender, MCL 769.13, to natural life for the CSC I conviction and 10 to 30 years for each of the CSC II convictions. Defendant appeals as of right. We affirm.

## I. BRIEF FACTUAL BACKGROUND

Defendant's convictions arise out of his sexual abuse of his daughter. The prosecution presented evidence that defendant sexually assaulted his daughter from the time that she was four years old through the beginning of college. The crimes at issue pertained to three separate assaults that occurred when the victim was 10 or 11 years old: she testified regarding two instances of touching and one of digital penetration. Numerous witnesses testified that defendant had admitted to the inappropriate touching. Also, defendant had sent the victim an e-mail in which he made admissions. His theory of defense largely focused on the CSC I charge. Specifically, he claimed that, although he may have engaged in sexual contact with his daughter, no penetration occurred when she was 10 or 11 years old. Consequently, this matter came down to a credibility contest between the victim and defendant.

-1-

## II.  ANALYSIS

## A.  EVIDENCE OF OTHER BAD ACTS

The victim testified to numerous instances of sexual abuse apart from the charged crimes. Defendant argues that this other acts evidence should have been excluded pursuant to MRE 403. "The decision whether [other acts] evidence is admissible is within the trial court's discretion and will only be reversed where there has been a clear abuse of discretion." *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998). "An abuse of discretion occurs . . . when the trial court chooses an outcome falling outside this principled range of outcomes." *People v Norfleet*, 317 Mich App 649, 664; 897 NW2d 195 (2014), quoting *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). "At its core, an abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome[.]" *Id*. So, "[w]hen the trial court selects one of these principled outcomes, the trial court has not abused its discretion and, thus, it is proper for the reviewing court to defer to the trial court's judgment." *Id*.

In this case, the evidence was admitted under both MRE 404(b) and MCL 768.27a. MRE 404(b)(1) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

MCL 768.27a provides, in relevant part: "[I]n a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." For purposes of this case, it is uncontested that CSC I and CSC II are listed offenses. However, even if relevant, evidence under the court rule, *People v Roscoe*, 303 Mich App 633, 645-646; 846 NW2d 402 (2014), as well as the statute, *People v Watkins*, 491 Mich 450, 481; 818 NW2d 296 (2012), must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice under an MRE 403 analysis.

The MRE 403 balancing test permits the trial court to exclude the admissible evidence of other acts " 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' " *Id*.; *Watkins*, 491 Mich at 481. This Court has described the proper approach under MRE 403 as follows:

> [T]his Court must make two distinct inquires under the balancing test of MRE 403. First, this Court must decide whether introduction of . . . prior-bad-acts evidence at trial was unfairly prejudicial. Then, this Court must apply the balancing test and "weigh the probativeness or relevance of the evidence" against the unfair prejudice.

> Upon completion of this second inquiry, this Court can determine whether the trial court abused its discretion in allowing . . . prior bad acts into evidence. [*People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011) (footnote omitted).]

"[U]nfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Pickens*, 446 Mich 298, 337; 521 NW2d 797 (1994) (citations omitted). The analysis under Rule 403 often involves the balancing of several factors, including the following: (1) the "time required to present the evidence and the possibility of delay," (2) "whether the evidence is needlessly cumulative, how directly the evidence tends to prove the fact for which it is offered," (3) "how essential the fact sought to be proved is to the case," (4) "the potential for confusing or misleading the jury," and (5) "whether the fact can be proved in another manner without as many harmful collateral effects." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). The Michigan Supreme Court has likewise identified the following factors as being relevant to the analysis:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich at 487-488.]

In weighing these factors, courts should "weigh in favor of the evidence's probative value the extent to which the other-acts evidence supported the victim's credibility and rebutted the defense's attack thereof." *Id*. at 492. Moreover, as the Michigan Supreme Court has explained, "when applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Id*. at 487. Consequently, "other acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference." *Id*.

In this case, evidence of defendant's sexual assaults against the victim before and after the charged crimes was highly probative of the prosecution's case. First and foremost, the other acts committed while the victim was still a minor could be used under MCL 768.27a to show that defendant had a propensity to commit such acts against minors. Moreover, the evidence of other acts during the victim's childhood into her adulthood demonstrated that defendant had pursued his sexual interest in the victim for practically her entire life. Likewise, this evidence directly undermined the defense theory that, although defendant admitted to inappropriately touching the victim, he never engaged in penetration. With the other acts evidence, the prosecution was able to present evidence that defendant had engaged in penetration over a several-year period, including penetration with both his fingers and his penis. It additionally demonstrated that defendant made attempts to conceal penetration.

Contrary to defendant's assertions, the record does not reflect that the other acts evidence "dominated" the trial or that the evidence was unfairly prejudicial. Instead, the specific details regarding the assaults at issue were established, and then the other acts evidence was relied on to

demonstrate that these were simply some of the instances that were part of defendant's sexual attraction for, and lengthy history of assaults against, the victim. Nothing in the record supports the notion that the evidence under MRE 404(b) and MCL 768.27a "warped the jury," "overshadowed the actual facts of this case and [the victim's] spotty memory," "misled the jury and placed undue weight on the impact of these other acts," or "guaranteed that the jury would be diverted from a rational consideration of [the victim's] testimony." Indeed, all of the relevant factors generally weigh in favor of admitting the other acts evidence. To begin, the other acts and the acts at issue were similar and part of the same pattern. Also, they were within a pertinent time frame of the acts at issue because they were all part of defendant's long-term sexual interest in the victim. Additionally, there were no intervening acts, the other acts evidence was equally as strong as the evidence of the acts at issue, and the other acts evidence played a crucial role in the prosecution's case because this matter ultimately came down to a credibility contest. *Id.*

Moreover, the prosecutor did not rely on the other acts evidence during her opening and closing arguments to assert that defendant was a bad person. And the trial court instructed the jury to "be very careful to consider it for only one limited purpose, that is, to help you judge the believability of testimony of [the victim] regarding the acts for which the defendant is now on trial" and to "not convict the defendant here solely because you think he's guilty of other bad conduct." This Court presumes that this instruction was, in fact, followed. See, e.g., *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003) ("Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors."). Accordingly, we find no error warranting relief with respect to this issue.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Between his principal brief on appeal and his pro se brief filed pursuant to Administrative Order No. 2006-4, Standard 4, defendant identifies four alleged instances of ineffective assistance of counsel. He moved for a remand in this Court, which was denied; therefore, "[this Court's] review is limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). "The determination whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009), citing *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Findings of fact are reviewed for clear error, and questions of constitutional law are reviewed de novo. *Id.*

To prevail on an ineffective-assistance argument, "[a] defendant must first show that defense counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense." *Payne*, 285 Mich App at 188 (citations and internal quotation marks omitted). The issue "[w]hether defense counsel's performance was deficient is measured against an objective standard of reasonableness." *Id.* (citation omitted). And "[t]o demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Id.* at 188-189 (citation and internal quotation marks omitted).

## 1. JURY INSTRUCTION

Defendant first argues that defense counsel failed to request a lesser-included offense jury instruction on CSC II with respect to the CSC I charge. However, CSC II is *not* a lesser included offense of CSC I. See, e.g., *People v Lemons*, 454 Mich 234, 253-254; 562 NW2d 447 (1997) (holding that CSC II is a cognate lesser offense of CSC I "because CSC II requires proof of an intent not required by CSC I—that defendant intended to seek sexual arousal or gratification"). Because it is a cognate lesser offense, not a necessarily included lesser offense, defendant's argument that a CSC II instruction was required fails. "Instructions on cognate lesser offenses are not permitted." *People v Lowery*, 258 Mich App 167, 173; 673 NW2d 107 (2003). Accordingly, defendant has not established that counsel's performance was deficient in this regard.

## 2. JURY SELECTION

Defendant also argues defense counsel should have ensured the removal of Juror 153 who disclosed that she "was sexually assaulted by a friend probably six years ago." However, this juror repeatedly stated that her experience would have no impact on this case, that she had "[n]o concerns" with her ability to be fair, that defendant was presumed innocent, that this case would not open up any wounds from the prior incident, that she would judge all of the elements fairly, and that she would support a not guilty verdict if the necessary elements were not established. *Nothing* in the record indicates that Juror 153 was biased in any way. Moreover, a "juror's promise to keep the matters of her personal life separate from defendant's case [i]s sufficient to protect defendant's right to a fair trial." *People v Johnson*, 245 Mich App 243, 256; 631 NW2d 1 (2001). When a juror asserts that he or she can be fair, and the trial court accepts that assurance, there can be "no reasonable probability that the outcome of the case would have been different" had that juror been struck. *Id*. at 259-260. Furthermore, "an attorney's decisions relating to the selection of jurors generally involve matters of trial strategy, which [appellate courts] normally decline to evaluate with the benefit of hindsight." *Id*. at 259. There is nothing in the record to support defendant's assertion that Juror 153 was biased or that defense counsel made a tactical mistake, much less an unreasonable one, in declining to strike Juror 153. Accordingly, defendant has established neither his attorney's deficient performance nor the requisite prejudice to support an ineffective assistance of counsel claim.

## 3. MEDICAL RECORDS

In his Standard 4 brief, defendant asserts that defense counsel should have investigated the victim's medical records. According to defendant, these records would have demonstrated "that her hymen was still intact and undisturbed" before leaving for college and that the victim's cutting herself was not related to his sexual assaults against her. Factually, defendant has not provided any evidence to show that any records existed that would have established these matters. Moreover, he has not demonstrated that such evidence would prove a lack of penetration. Defendant's failure to adequately support the factual predicate of his argument constitutes abandonment. See, e.g., *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . ."). Not surprisingly, defendant has also not cited any caselaw to support the notion that CSC I might require proof of a ruptured or disturbed hymen. Again, his failure to do so constitutes abandonment of the issue. *Kelly*, 231 Mich App at 640-641

(explaining that a defendant may not "give only cursory treatment with little or no citation of supporting authority" to the issues that he or she raises on appeal).

Moreover, this Court has routinely declined to substitute its judgment for that of counsel on matters of trial strategy, including decisions regarding which evidence to present. *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). "[D]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy[.]" *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (citation, internal quotation marks, and one alteration omitted). Ultimately, "the failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *Id*. Had trial counsel investigated the victim's medical records and identified records supporting defendant's assertions, defendant would only have been able to establish an outcome-determinative failure if trial counsel had failed to present that evidence at trial. But such a decision would have been precisely the type of strategic decision envisioned. Further, it cannot be said that such a strategic decision deprived defendant of a substantial defense given the absence of any indication that a nonruptured or undisturbed hymen would support a defense to CSC I.

### 4. POLYGRAPH EXAMINATION

Defendant's last ineffective-assistance argument focuses on his assertion that defense counsel should have been present for his polygraph examination. Although primarily faulting counsel for not being there, he also takes issue with law enforcement's decision to conduct the polygraph without counsel, its decision to ask him questions before beginning the examination, and its failure to tell him that his high blood pressure and heart condition could impact his results. According to defendant, these actions violated his constitutional rights.

The right to counsel is guaranteed under both the United States Constitution and the Michigan Constitution. See US Const, Am V, Am VI; Const 1963, art 1, §§ 17, 20. This right attaches once criminal proceedings have been initiated and is operative at all "critical stages" of the proceeding, which certainly includes situations where a criminal defendant is questioned by law enforcement. *Montejo v Louisiana*, 556 US 778, 786; 129 S Ct 2079; 173 L Ed 2d 955 (2009). Once the right attaches, however, it may be waived: "Our precedents also place beyond doubt that the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent." *Id*.

Here, it is undisputed that defendant did, in fact, waive his right to counsel before answering questions at the polygraph examination. Moreover, defendant's admissions during his polygraph examination were duplicative of other testimony and evidence, including defendant's e-mail to the victim, that corroborated the victim's testimony about the alleged assaults. Consequently, even if this evidence had been excluded, nothing supports the notion that the result of the proceeding would have been any different. *Payne*, 285 Mich App at 188-189. Accordingly, defendant has failed to establish ineffective assistance of counsel.

### C. PROSECUTORIAL MISCONDUCT

Defendant next argues that the prosecutor committed misconduct during closing argument. "Claims of prosecutorial misconduct are generally reviewed de novo to determine whether the

defendant was denied a fair trial." *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013). However, where, as here, a defendant fails to object, "unpreserved claims of prosecutorial misconduct are reviewed for plain error." *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

"Generally, [p]rosecutors are accorded great latitude regarding their arguments and conduct." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (citation and internal quotation marks omitted). This means that they can "argue the evidence and all reasonable inferences from the evidence as it relates to [their] theory of the case." *Id.* (citations and internal quotation marks omitted). However, "prosecutors should not resort to civic duty arguments that appeal to the fears and prejudices of jury members or express their personal opinion of a defendant's guilt, and must refrain from denigrating a defendant with intemperate and prejudicial remarks." *Id.* Issues of prosecutorial misconduct are considered "on a case-by-case basis by examining the record and evaluating the remarks in context, and in light of defendant's arguments." *Thomas*, 260 Mich at 454.

Defendant first points to the prosecutor's argument that it was "appalling" for defendant to suggest that the victim did not remember the sexual assaults at issue in this case. In response to defense counsel's closing argument that the victim was "not a particularly good historian about where this thing, this digital penetration occurred," the prosecutor argued that it was "appalling" to suggest that she could not "remember" and "must be mistaken" about digital penetration, emphasizing that the victim actually recalled quite a few details about all of the assaults she testified about. A prosecutor's remarks are to be taken in light of the defendant's arguments." *People v Ackerman*, 257 Mich App 434, 453-454; 669 NW2d 818 (2003) (citation and internal quotation marks omitted). Here, there was nothing improper about calling the defense attempt to impeach the victim's credibility "appalling." Although that adjective may be a bit colorful, prosecutors are not required to "phrase [their] argument in the blandest of all possible terms." *People v Marji*, 180 Mich App 525, 538; 447 NW2d 835 (1989) (citations omitted). Rather, they are prohibited from "inflaming the prejudices of a jury," but are, in fact, required to advocate and "vigorously argue" on behalf of the people. *Id.* That is precisely what the prosecutor did here. And, even if the word "appalling" was too colorful, this Court has recognized that such a brief expression of frustration, in the context of an argument and trial as a whole, is "too fleeting and unremarkable to constitute an obvious error that denied defendant a fair trial." *People v McLaughlin*, 258 Mich App 635, 647; 672 NW2d 860 (2003).

The second comment is equally unremarkable in context. The prosecutor argued that the victim "could have been on the stand for three days, if not longer, given all the abuse that she endured." Again, this was directly responsive to the defense argument that the victim's statements to law enforcement were inconsistent with her testimony at trial, which expressly included assertions that the victim failed to disclose certain details. See *Ackerman*, 257 Mich App at 453-454. The prosecutor was simply asserting that there was a reasonable explanation for the fact that the victim's disclosures to law enforcement and her trial testimony may not have been exhaustive of every single detail about every single instance of abuse.

Additionally, contrary to defendant's argument, the circumstances presented here are not comparable to those presented in *People v Dalessandro*, 165 Mich App 569; 419 NW2d 609 (1988). In that case, the prosecutor called the defense's theory "a sham," "a sham meant to mislead

you," "a bunch of lies," "disreputable," "lies," and various other things. *Id.* at 579. This Court described that argument as one that "attacked defense counsel and suggested to the jury that defense counsel was intentionally trying to mislead the jury." *Id.* at 580. The prosecutor also impermissibly asked the jury to sympathize with the victim. *Id.* at 581. The prosecutor's two unremarkable comments at issue here are simply not comparable to those at issue in *Dalessandro*.

## III. CONCLUSION

"A defendant is entitled to a fair trial, not a perfect one." *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016). In our view, defendant received a fair trial. For all of the reasons set forth above, we reject defendant's appellate arguments and affirm his convictions and sentences.

Affirmed.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Michael F. Gadola